UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------x
In Re:                                                          Chapter 13

PATRICK FAGAN, CHRISTINE FAGAN                                  Case No. 08-22991

---------------------------------------------------x
PATRICK FAGAN, CHRISTINE FAGAN,                                 Adversary Case No.
                Plaintiffs,

      vs.                                                       **COMPLAINT FOR VIOLATION
                                                                                OF TILA AND RESPA**

CJP ABSTRACT, LLC,
COMMONWEALTH LAND TITLE INSURANCE
HOMEQ SERVICING CORP.,
WACHOVIA BANK,
ARGENT MORTGAGE COMPANY,
AMC MORTGAGE SERVICES, INC.,
WELLS FARGO BANK, N.A.,
JOHN DOE, JANE DOE, XYZ CORP,
**fictitious names for substation of parties
when discovered.**
                Defendants.
---------------------------------------------------x

## INTRODUCTION

      1.        Jurisdiction of the Court arises under 28 U.S.C. 1331 in that this dispute involves predominant issues of federal law. Defendants have violated the provisions of the TILA and RESPA. Declaratory relief is available pursuant to 28 U.S.C. 2201 and 2202. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. 1367. Venue in this District is proper in that Defendants transact business here and the conduct complained of occurred here.

      2.        This Court also has jurisdiction to hear the claims for relief under the Real Estate Settlement Procedures Act pursuant to Section 2614 of Title 12 of the United States Code. Venue

1

lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

## PARTIES

3. The Plaintiffs, Patrick and Christine Fagan, are husband and wife, own a house and reside therein at 105 West Clarkstown Road, New City, New York 10956.

4. The Defendant, CJP Abstract, LLC, is a Title company doing business at 152 McClean Avenue, Staten Island, New York 10305.

5. Defendant Commonwealth Land Title Insurance Co. is a subsidiary of LandAmerica, a title insurance underwriter, with its corporate headquarters located at 5600 Cox Road, Glen Allen, VA 23060.

6. The Defendant, Homeq Servicing Corp., is a mortgage servicing company with its corporate headquarters located at 4837 Watt Ave, North Highlands, California 95660-5108.

7. The Defendant, Wachovia Bank is the parent company of HomeEq Servicing Corp., with its Corporate Headquarters located at 1 Wachovia Center, Charlotte, NC, 28288-0013.

8. The Defendant, Argent Mortgage Company, is a mortgage lender with an address of 333 Westchester Avenue, White Plains, New York, 10604.

9. Defendant AMC Mortgage Services, Inc. is a mortgage servicing company with its corporate headquarters located at 505 City Parkway West, Suite 100, Orange, California, 92868.

10. The Defendant Wells Fargo Bank, N.A., is a banking entity and mortgage lender,

with its corporate headquarters located at 420 Montgomery St., San Francisco, CA 94163.

## FACTUAL ALLEGATIONS

11. On April 9, 2004, Plaintiff's bought a home. Defendant, CJP Abstract, LLC was the title agency for Commonwealth Title Company which insured title, accepted funds and documents in escrow for payment of taxes, recording, and searched the public file. Plaintiffs gave a mortgage to New Century Mortgage Corporation.

12. Defendant, CJP Abstract, LLC agreed and undertook the responsibility to record the deed and mortgage with the County Clerk shortly after the closing.

13. In or around February of 2005 Plaintiffs wanted to refinance their home and they applied for a loan. Plaintiffs discovered that their deed was never recorded and that there were unpaid taxes in the amount of around $10,000.00 on the property.

14. Mr. William Smith, Esq. Plaintiff Christine's employer, an attorney, contacted CJP Abstract regarding their failure to record the deed.

15. Defendant CJP Abstract immediately recorded the deed on February 9, 2005, which was 10 months after the purchase of the home.

16. In or around February of 2005 Plaintiff's also discovered that there were several violations on the home, after the Plaintiffs went to the town and obtained a violation report.

17. A fireplace had been installed in the house with no permit and there was a wrong type of chimney and hearth. Plaintiffs paid $200 for an engineer to estimate the repairs, so that they could clear the numerous violations and refinance the property.

18. CJP Abstract charged for an inspection of municipal records prior to purchase in April of 2004 and did not report the numerous violations.

19. Plaintiffs could not apply for a STAR exemption in 2004 since the title was not recorded in their name because of CJP failure to timely record the deed, paying increased taxes.

20. In May of 2005 Plaintiffs refinanced the loan with Argent Mortgage Company. They received an Adjustable Rate Mortgage for the amount of $302,400.00 from which Plaintiffs also paid all the past due taxes.

21. The mortgage was immediately assigned to AMC Mortgage Services, as servicer, in May of 2005. Defendant is the holder, by assignment, of a Note and Mortgage, dated May 26, 2005, given by Patrick Fagan (the "Debtor"). Christine Fagan (the "Debtor"), and Nicole Fagan-Blau (the "non-filing Co-Debtor") in the original principal amount of $302,400.00 pledging the Premises as security.

22. Subsequently, Plaintiffs received a letter on August 29, 2005 stating that effective September 17, 2005, the mortgage would be assigned from AMC Mortgage Company to HomeEq Servicing Corp.

23. Plaintiffs were current on all their payments with AMC.

24. HomeEq took over the servicing of Plaintiffs loan on September 17, 2005.

25. On November 9, 2005, Plaintiffs received a statement from HomeEq stating that there was a $1,836.52 tax escrow shortage and that the Plaintiffs' monthly payments would increase if they would not pay the shortage amount in full.

26. Plaintiffs were deemed "late" in their payments thereafter as a result of the unilateral charge of the higher monthly payment.

27. When Plaintiffs made their payment, it was applied to "unapplied funds" instead of being applied to interest and principal balance.

28. In the Promissory Note, it states in #5, section (A), "I agree that when I am making a prepayment, the Lender shall apply funds it receives in accordance with the Order of Application of payment set forth in Section 2 of the Security Interest."

29. In the Mortgage between Plaintiffs and Defendant HomeEq, in Section 2 of the Covenant is the "Application of Borrower's Payments and Insurance Proceeds". It states:

> First, to pay interest due under the Note;
> Next, to pay principle due under the Note; and
> Next, to pay the amounts due Lender Under Section 3 of this Security Instrument,
> Such payments will be applied to each Periodic Payment in the order in which it became due.
> Any remaining amounts will be applied as follows;
> First, to pay any late charges;
> Next, to pay any other amounts due under this Security Instrument; and
> Next to reduce the principal balance of the Note.

30. This contract required Defendant HomeEq to first apply all payments to interest, then Principal and then to any other allowed charges as stated in the Note. However, the Defendant, HomeEq, applied payments to suspense, in "unapplied funds".

31. Plaintiffs continued making monthly payments, which were applied to the previous months bill

32. On January 9, 2006, Plaintiffs paid $10,197.88 to pay off all late payments. $296.41 was applied to principal balance, $4,855.41 to interest, $1,833.34 to Escrow and $3,212.72 to "unapplied funds." Pursuant to the Mortgage Note this money was to be applied to interest and principle.

33. Instead, Plaintiffs were billed another $7,099.64, reflecting $3,492.58 as the payment for February $3,492.58 as amount past due and $103.04 in late charges.

34. Plaintiffs did not owe any "Past due" money on that statement since their previous

5

payment was wrongfully applied to "unapplied funds" instead of to pay the monthly mortgage payment.

35. Throughout the entire period of September 2005 until present, over the course of HomeEq servicing this loan, whenever Plaintiffs overpaid on the loan the additional money they paid was applied to "unapplied funds" instead of being applied to principle.

36. On October 25, 2006, Plaintiffs received another statement, yet again stating that there was an escrow shortage in the amount of $1,220.49 and that Plaintiffs payments would increase by $101.71 per month.

37. In or around November of 2006, Plaintiffs made a mortgage payment to HomeEq, but HomeEq did not cash it.

38. Plaintiffs received a statement reflecting the previous month as unpaid. Plaintiffs called HomeEq about this, and were told they would find the check and cash it. The check was subsequently cashed the next month, at the same time when HomeEq attempted to withdraw the next month's payment automatically from Plaintiffs' bank account, trying to process the November and December payments at the same time.

39. Plaintiffs' bank did not release the funds immediately to HomeEq since they wanted to confirm with Plaintiffs the transfer of this very large amount, which was much greater than any previous usual withdrawals. The bank attempted to call Plaintiffs at home but did not reach them since they were at work at that time.

40. Plaintiffs' bank, Union State Bank, informed HomeEq that they would not release the money for both months, until they could confirm it with Plaintiffs.

41. The bank manager in Plaintiffs' bank, Mr. Bady, immediately wrote a letter to

HomeEq, explaining what had happened. Nonetheless, HomeEq would no longer accept payments from Plaintiffs bank account. Plaintiffs were instructed to send around $7,000.00, reflecting payments for both months, through Western Union, which was very expensive, and cost Plaintiffs about 15% in fees.

42. In February of 2007, HomeEq accepted Plaintiff's payment but in March of 2007 HomeEq would not accept Plaintiff's payment, stating that it was over 90 days late, despite the fact that it was no more than 60 days late.

43. When Plaintiff, Christine, called HomeEq attempting to resolve this, they were told by the employee who answered the phone that there is "nothing you can do, you have no business buying a home you cannot afford." The employee told her that she had 24 hours to pay the entire back debt or they would start foreclosure actions against them.

44. Plaintiffs were very emotionally upset by these actions of Defendant HomeEq.

45. Plaintiff, Christine called again in an effort to work things out. This time, Plaintiffs were offered a repayment plan of $1,000.00 every month for six months, on top of the regular monthly mortgage payments. Plaintiffs were told that if they paid one day late, foreclosure action would immediately be taken against them. This also emotionally upset Plaintiffs.

46. Plaintiffs started with the repayment plan in April of 2007 and concluded on September 30th, 2007. Plaintiffs were current with the mortgage payments on September 30th, 2007.

47. However, HomeEq demanded another payment be made on October 1, 2007, a day after Plaintiffs made the last payment. Plaintiffs did not have that money immediately.

HomeEq offered another repayment plan of $600 a month for the next 6 months, to cover the late payment of October.

48. HomeEq sent an inspector every month to the Plaintiff's home, "to make sure they were still living there." The inspector did not come into the home, but Plaintiffs were unilaterally charged $175.00 for each inspection.

49. Plaintiffs made the subsequent payments from October 2007 on the 15th of each month.

50. Plaintiffs demanded that HomeEq supply them with an escrow re-analysis since they did not understand why the escrow suddenly went up so much. HomeEq refused to give them any statements "until the end of the year".

51. In November of 2007, Plaintiffs also discovered that HomeEq failed to pay the School Taxes, due in September. HomeEq paid the school taxes only after Plaintiff's notified them thereof. Upon information and belief, this caused additional late charges and interest on the school taxes.

52. On November 26, 2007, HomeEq finally did an escrow reanalysis and "found" that there was an overage in the escrow charges. They mailed Plaintiffs a refund check of $417. However, they did not send Plaintiff the requested escrow statements.

53. On December 11, 2007, this office, Law Office of Shmuel Klein, on behalf of Plaintiffs, sent a Qualified Written Request to HomeEq. HomeEq did not acknowledge it nor respond thereto within the time required by law.

54. In or around January of 2008, Plaintiffs discovered that HomeEq paid the homeowner's insurance policy on the Plaintiffs premises from Escrow twice in 2007, in February

of 2007 and again in December of 2007.

55. Plaintiff, Christine called HomeEq, who told her that they paid the Insurance "early", for the new policy, which would go into effect in March of 2008.

56. As a result of this action by HomeEq, the escrow account reflected a $200.00 shortage.

57. The homeowner's policy was due to be paid in February of 2008, and the Escrow payments were to be spread out accordingly. HomeEq failed to do so.

58. Plaintiffs were made to pay the higher escrow amounts because of HomeEq's negligence and miscalculations, which stretched Plaintiffs' financial and emotional resources and caused them to be late in payments, when they were not late.

59. HomeEq's actions caused severe emotional distress to Plaintiffs.

60. On July 15, 2008, the Debtor filed with the Clerk of this Court a petition for relief under Chapter 13 of the Bankruptcy Code.

## COUNT I
### Defendant CJP & Commonwealth

61. The allegations in paragraphs 1 through 60 of this complaint are realleged and incorporated herein by this reference.

62. Defendant CJP is a title abstractor and title insurance agent and agreed with Plaintiffs to diligently perform all title, closing and recording duties relating to the real estate transaction for which it contracted to perform for Plaintiff.

63. Defendants CJP and Commonwealth as its principal breached its contract was negligent and breached its fiduciary duty to Plaintiffs.

9

64. Defendants CJP and Commonwealth are liable to Plaintiffs for its negligence in failing to record the deed.

65. Defendant CJP and Commonwealth breached their contract to Plaintiffs. As the title company and closing agent in the transaction, Defendant CJP was required to pay taxes. Defendants CJP and Commonwealth breached their contract.

66. Defendants CJP and Commonwealth are liable for negligence to Plaintiffs in failing to disclose to Plaintiffs pre-existing violations they were aware of in the title search.

67. Defendants' actions have caused Plaintiffs damages and severe emotional distress and Defendants CJP and Commonwealth are liable to Plaintiffs therefore.

# CLAIMS AGAINST DEFENDANTS HOMEQ SERVICING CORP., ARGENT MORTGAGE COMPANY, AMC MORTGAGE SERVICER, and WELLS FARGO BANK, N.A.

## COUNT II
**Failure to Comply with Section 2605 of Title 12**

68. The allegations in paragraphs 1 through 67 of this complaint are realleged and incorporated herein by this reference.

69. The Defendant, HomeEq, is the servicer of a "federally related mortgage loan" as that term is defined in Section 2602(1) of Title 12 of the United States Code.

70. The Defendants did not acknowledge the QWR within 20 days of receipt of the "qualified written request" nor provide the information requested and inform the Plaintiffs of its actions as required by Section 2605(e)(1)(B)(2) of Title 12 of the United States Code and 3500.21(e)(3) of Reg. X.

71. The Defendants did not, within 60 days of receipt of the "qualified written request" provide the information requested and inform the Plaintiffs of its actions as required by Section 2605(e)(1)(B)(2) of Title 12 of the United States Code and 3500.21(e)(3) of Reg. X.

72. The Defendants have failed to comply with Section 2605 of Title 12 of the United States Code.

73. Pursuant to Section 2605(f) of Title 12 of the United States Code and Section 3500.21(f) of Reg. X, the Plaintiffs may recover of the Defendant actual damages, costs and reasonable attorney fees for each failure of the Defendants to comply with any part of Section 2605 of Title 12 of the United States Code.

## COUNT III
### Breach of Duty

74. The allegations in paragraphs 1 through 73 of this complaint are realleged and incorporated herein by this reference.

75. All Defendants owed a reasonable duty of care to its clients, Plaintiffs.

76. This duty includes accurate record keeping, diligent oversight, responsible investigation, and responsible escrow calculation.

77. Defendant, HomeEq held and misapplied multiple payments submitted by the Plaintiffs.

78. Defendants, HomeEq, failed to timely pay the school taxes on the property.

79. Defendant, HomeEq, paid insurance for 2008, in December of 2007, instead of in February of 2008, deliberately causing Escrow shortage.

80. Defendants Argent Mortgage Company, Wells Fargo, as Assignee, as well as

Defendant Wachovia, who is the parent company of HomeEq, owed a duty to Plaintiffs to ensure that the servicer, HomeEq Servicing, is exercising its duty of care towards the collection of the payments, including accurate record-keeping, diligent oversight, responsible investigation, and responsible escrow calculation. Defendants are liable to Plaintiffs for HomeEq's breach of its duty.

81. By these misplacements, misapplications, and failures, Defendants breached their duty to the Plaintiffs.

82. As a direct and proximate cause of Defendants breach, Plaintiffs have been harmed.

### Count IV
### Conversion

83. Paragraphs 1-82 are incorporated herein by reference.

84. The Intentional Tort of Conversion is defined as follows: Personal property is "converted" if a person exercises control over an owners personal property in a way that: 1) Is contrary to the owners right to the personal property, or 2) Intentionally destroys or changes the personal property, or 3) Intentionally deprives the owner of possession of the property permanently, or for an indefinite period of time.

85. Plaintiffs' payments to the Defendant, HomeEq, constitute Plaintiffs' personal property.

86. Defendant's use of Plaintiffs' payments was contrary and inconsistent with Plaintiffs' right to the property.

87. Defendant HomeEq intentionally held Plaintiff's checks and cashed several

checks at the same time without authorization of Plaintiffs.

88. Defendant, HomeEq intentionally deprived Plaintiffs of their property for an indefinite period of time.

89. Defendant illegally converted a portion of funds to "Unapplied Funds" and paid unauthorized, early insurance payments from escrow, before they were due.

90. Defendant thereby wrongfully converted Plaintiffs property to its use, inconsistent with Plaintiffs' rights to the property and in violation of New York law.

### Count V
### Illegal Collection Practices

91. Paragraphs 1-90 are incorporated herein by reference.

92. Under the provisions of the Fair Debt Collection Practices Act of 1977, (FDCPA) 15 U.S.C. 1692 et seq., while attempting to collect on any account, bill or other indebtedness; communicate with a debtor by the collection practice must not be abusive.

93. Pursuant to the FDCPA, collection of a debt not authorized or created by an agreement is prohibited.

94. The Defendant, HomeEq used false means to collect debt when they failed to accurately keep accounting of the Plaintiffs' payments and alleged a debt in excess. Defendant HomeEq failed to abide by and violated the conditions required by FDCPA as set forth above.

95. Defendant threatened and harassed Plaintiffs in collection of the debt, and threatened to take legal action when they had no rights to do so.

96. Because of the illegal collection practices of the Defendant, HomeEq, the Plaintiffs have suffered harm for which Defendant is legally responsible.

## Count VI
## Breach of Contract

97. Paragraphs 1-96 are incorporated herein by reference.

98. Plaintiffs and Defendants, as lenders, assignees and servicers, entered into a Promissory Note on May 26, 2005 which required Defendants to first apply all payments to interest, then principal and then to any other allowed charges as stated in the Note.

99. Defendant, HomeEq failed to credit Plaintiffs for payments as stated in the Note and therefore are in breach of contract as stated above.

100. Plaintiffs are entitled to rescind the contract and for all payments and charges to be fully refunded to Plaintiff by Defendants and their principals.

## Count VII
## Unconsionability

101. Paragraphs 1-100 are incorporated herein by reference.

102. The Restatement Second of Contracts describes an unconscionable contract or term, allowing that the court may refuse to enforce an unconscionable contract, particularly to prevent an unjust outcome. Mortgage foreclosure is an equitable action and all the principles of equity apply. Cross v. Federal National Mortgage Ass'n, 359 So.2d 464 (Fla. 4th DCA 1978).

103. Amerifirst Federal Savings and Loan v. Century 21, 416 So. 2d 45 (3rd DCA 1982) established that it would be unconscionable for a lender to foreclose on a property after they have accepted payment subsequent to the missed or late payment.

104. HomeEq threatened Plaintiffs to foreclose on their property, despite the fact that they accepted payments and Plaintiffs were not more than 60 days late.

105. Plaintiffs suffered severe emotional distress as a result of HomeEq's actions.

## Count VIII
## Violations of RESPA

106. Paragraphs 1-105 are incorporated herein by reference.

107. Defendants violated RESPA by the following conduct:

    a. Failing to meet the requirements of 12 U.S.C. § 2605 regarding transfer of servicing and responding to qualified written requests;

    b. Failing to meet the requirements of 12 U.S.C. § 2609 regarding escrow account statements, collection of escrow and notification of shortage in escrow account, and escrow disbursements.

108. Plaintiffs are entitled to relief under the RESPA, including damages and a declaratory judgment that the Defendants conduct violated RESPA.

## Count VIX
## Violations of TILA

109. Paragraphs 1-108 are incorporated herein by reference.

110. Thousands of notes and mortgages serviced by Defendants are adjustable rate mortgages, subject to the disclosure requirements of Reg. Z, 12 C.F.R § 226.20 (c) for variable rate adjustments.

111. Pursuant to 12 C.F.R. R § 226.20 (c), Defendants are required to include in its variable rate adjustment disclosure a statement of the loan balance. 12 C.F.R. R § 226.20 (c)(4).

112. As a result of the imposition of unauthorized or inflated charges, Defendants failed to accurately disclose the loan balance. Defendants' disclosures state a loan balance that is higher than it would have been but for Defendants' intentional improper charges.

113. Plaintiffs have been damaged by such violations, in that they have been charged improper fees, and in that they have either paid such fees or had their property encumbered by

15

such fees.

114. Plaintiffs are entitled to relief under TILA, including damages and declaratory judgment that Defendants' conduct violates TILA.

### Count X
### Intentional Misrepresentation

115. Paragraphs 1-114 are incorporated herein by reference.

116. Defendants have represented to the Plaintiffs that Defendants are entitled to collect various loan charges that were not legally due and owing.

117. Defendants' representations concerning its entitlement to collect such fees and charges and Plaintiffs did pay such fees and charges to their detriment.

118. Plaintiffs' reliance was reasonable or justifiable in the circumstances.

119. Plaintiffs have suffered damages.

120. Plaintiffs are entitled to relief for misrepresentation.

### Count XI
### Negligence/Negligent Servicing

121. Paragraphs 1-120 are incorporated herein by reference.

122. Defendants owed Plaintiffs a duty of care with respect to servicing their mortgage loan for reasons included, without limitation, that the loan was secured by an interest in the homeowner's residence and that lack of care resulted in overpayments causing great economic hardship.

123. The duty of care required reasonable diligence, *inter alia*,

    a.    to avoid incurring unnecessary charges;
    b.    to make payments due from funds being held in the borrower's escrow accounts in a timely fashion; and

c. To pay Plaintiffs taxes timely and insurance timely.

124. Defendant HomeEq's conduct with respect to Plaintiffs was far below applicable standards for mortgage loan servicing.

125. Defendants' conduct was negligent with respect to Plaintiffs.

126. Defendants' conduct was the proximate cause of damages to Plaintiffs.

127. Plaintiffs are entitled to relief for Defendants' negligence.

<u>**Count XII**</u>
**Breach of Fiduciary Duty**

128. Paragraphs 1-127 are incorporated herein by reference.

129. Defendants' assumed fiduciary duties with respect to the servicing of mortgage loans and monies it held or charged in escrow for Plaintiffs.

130. Defendants' breached its fiduciary duties charging excessive escrow charges to Plaintiffs, stating that there was an escrow shortage, while prepaying 2008 Insurance with that money.

131. Defendants' breached its fiduciary duties by overcharging escrow fees when the escrow account was not short and failing to provide an escrow reanalysis statement promptly despite Plaintiffs' requests.

132. Plaintiffs were damaged by Defendants' breach of fiduciary duties.

133. Plaintiffs are entitled to relief for Defendants' breach.

## Count XIII
## Unjust Enrichment

134. Paragraphs 1-133 are incorporated herein by reference.

135. Defendants have engaged in unlawful collection activities.

136. Defendants have collected monies that are not due and owing under applicable contract law, because the contract or other applicable law does not permit Defendants' to collect such fees and charges.

137. Said conduct sounds in equity under the common law of unjust enrichment or money had and received and constructive trust.

138. Defendants have been unjustly enriched by its conduct.

139. Plaintiffs have suffered loss by virtue of Defendants' conduct.

140. Plaintiffs are entitled to relief for unjust enrichment.


## Count XIV
## Declaratory and Injunctive Relief

141. Paragraphs 1-140 are incorporated herein by reference.

142. Defendants have engaged in and continue to engage in conduct that has a great probability of causing substantial and irreparable harm.

143. Plaintiffs are entitled to declaratory relief that Defendants' conduct is unlawful.

144. Plaintiffs are entitled to injunctive relief necessary to insure that such conduct will not continue into the future, and to provide uniform standards of conduct for servicing Plaintiffs' mortgage loan.

## Count XV
## Infliction of Emotional Distress

145. The allegations of paragraphs 1-144 in this pleading are incorporated as if fully rewritten herein.

146. This claim is for tortuous infliction of emotional distress caused to Plaintiffs by Defendants.

147. Defendants' acts as described above were done intentionally with the purpose of coercing Plaintiffs to pay the alleged debt.

148. During the course of their actions, and/or subsequent thereto, Defendants have recklessly and/or intentionally caused severe emotional distress to Plaintiffs without protection of law and at a time when they knew or should have known that its actions would do so.

149. As a direct and proximate result thereof, Plaintiffs were injured and may continue to suffer such injury in the future.

## TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on each and every claim herein.

**WHEREFORE,** the Plaintiffs having set forth their claims for relief against the Defendants respectfully pray of the Court as follows:

A. That the Plaintiffs have and recover against the Defendants a sum to be determine by the Court in the form of actual damages;

B. That the Plaintiffs have and recover against the Defendants a sum to be determined by the Court in the form of statutory damages;

C. That the Plaintiffs have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages;

D. That the Plaintiffs have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;

E. That this Court order the Defendants to pay to the Plaintiffs their attorney's fees and costs and additional actual damages a sum to be determined by the Court for each failure to comply with any part of Section 2605 of Title 12 of the United States Code pursuant to Section 2605(f) of Title 12 of the United States Code and Section 3500.21(f) of Reg. X; and for the other above named violations; and

G. That the Plaintiffs have such other and further relief as the Court may deem just and proper.

Dated: September 3, 2009 /s/ Joshua N. Bleichman
Spring Valley, New York Joshua N. Bleichman
Law Office of Bleichman and Klein
Attorneys for Plaintiff
268 Route 59 West
Spring Valley, NY 10977
(845) 425-2510